175 So. 275

**BIRMINGHAM TRUST & SAVINGS CO. v.
JOSEPH.**

**6 Div. 110.**

Supreme Court of Alabama.

June 3, 1937.

Lange, Simpson & Brantley, Reid B. Barnes, and Ormond Somerville, all of Birmingham, for appellant.

Erle Pettus and Erle Pettus, Jr., both of Birmingham, for appellee.

GARDNER, Justice.

The suit is by appellant against appellee on promissory notes.

The sufficiency of plea 7 (appearing in the report of the case) as against demurrers interposed thereto is the only question presented.

The pleader, it is to be observed, seeks to invoke the provisions of what is known as the Deficiency Judgment Act, approved June 24, 1935 (Gen.Acts 1935, p. 184), but no reference is made to any matter of emergency nor to the date of mortgage foreclosure. Appropriate assignments of demurrer take the point.

The above-noted act is emergency legislation, so expressly indicated by the extensive preamble, and expressly declared in its body, as noted by the following:

"Section 9. That this Act, as aforesaid, is declared to be an emergency measure to safeguard the vital interests of the State,

and in the public interest and general welfare."

And it was so construed by this court in Mutual Building & Loan Association v. Moore, 232 Ala. 488, 169 So. 1, 6, wherein is the expression: "Regardless of the time named in the statute for it to continue, the emergency is a condition to its operation. When that ceases, the act immediately becomes inoperative, though it provides otherwise."

Manifestly, therefore, a defendant seeking to invoke the influence of the act should allege in his plea sufficient facts to disclose its operation. Plea 7 makes no reference to the act, and, as previously observed, contains no averment as to any emergency or the time of the foreclosure. The clear legislative intent was for the protection of the debtor's property from sacrifice at a sale during a period of economic depression. Yet the defendant here merely sets up the inadequacy of price at a foreclosure sale, without any reference whatever to the matter of economic depression, or the existence of any emergency that brought the statute into being. Under the authority of Mutual Building & Loan Association v. Moore, supra, where many cases dealing with emergency legislation are noted and reviewed, the demurrer to plea 7 was due to be sustained, and for the error in ruling to the contrary the judgment must stand reversed.

But counsel for the respective parties argue somewhat extensively upon the more recent opinion of the Supreme Court of the United States in Richmond Mortgage & Loan Corporation v. Wachovia Bank & Trust Co., 300 U.S. 124, 57 S.Ct. 338, 81 L. Ed. 552, wherein was upheld a North Carolina statute affecting foreclosure proceedings had after passage of the act, and the matter of recovery of deficiency judgments thereafter. See, also, Richmond Mortgage & Loan Corporation v. Wachovia Bank & Trust Co., 210 N.C. 29, 185 S.E. 482.

The North Carolina statute is wholly independent of any matter of emergency, and the court was careful so to state. "The statute involved in this action is not 'emergency legislation,' nor is its purpose to provide a 'moratorium' for debtors during a temporary period of depression. For this reason, the cases cited by appellant from other jurisdictions are not applicable in the instant case." Richmond Mortgage & Loan Corporation v. Wachovia Bank & Trust Co., 210 N.C. 29, 185 S.E. 482, at page 485.

And as emergency legislation cases were inapplicable there, so the North Carolina statute and the decisions thereon are likewise inapplicable here.

The Legislature of this state has proposed no such statute. The only act passed has relation solely to economic emergency. We are invited into a discussion of comparison of the North Carolina statute with that of our own. But there is no such comparison. They are entirely separate and distinct, and, in the absence of the passage of such a statute here, the court would not be justified in accepting an invitation to engage in a discussion of an unreal and imaginary law.

True, our act fixes a date for its expiration (October 1, 1939), unless earlier terminated by the Legislature. But this was but a legislative prophecy as to the continuance of the emergency, and is a matter for judicial determination. Such was the holding of this court in the Moore Case, supra, fully supported by the authorities generally.

It had been strenuously urged by counsel in some instances that the failure to fix a definite limit for the operation of such emergency legislation renders the law invalid, as illustrated by the following excerpt from In re People (Title & Mortgage Guarantee Co.), 264 N.Y. 69, 190 N.E. 153, 162, 96 A.L. R. 297: "Failure by the Legislature to limit the operation of the law to a definite term does not render the law invalid so long as the conditions which justify the passage of the law remain."

And perhaps the lawmaking body had such question in mind when a period for the limitation of the act was designated. But, however that may be, the act being an emergency legislation, the continuance of the emergency is a condition for its operation, and that question, as observed, is a judicial one. Such was the express holding in Chastleton Corporation v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 406, 68 L.Ed. 841, where the bill, filed in October 1922, charged the emergency was at an end, though it appears that the original act had been extended by the lawmaking body until May 1924. The court said:

"We repeat what was stated in Block v. Hirsh, 256 U.S. 135, 154, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165, as to the respect due to a declaration of this kind by the Legislature so far as it relates to present facts. But even as to them a Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the

truth of what is declared. 256 U.S. [135], 154, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165. Chas. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 536, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280. And still more obviously so far as this declaration looks to the future it can be no more than prophecy and is liable to be controlled by events. A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed. Perrin v. United States, 232 U.S. 478, 486, 487, 34 S.Ct. 387, 58 L.Ed. 691; Missouri v. Chicago, Burlington & Quincy R. Co., 241 U.S. 533, 539, 540, 36 S.Ct. 715, 60 L.Ed. 1148. In Newton v. Consolidated Gas Co., 258 U.S. 165, 42 S.Ct. 264, 66 L.Ed. 538, a statutory rate that had been sustained for earlier years in Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382, 15 Ann.Cas. 1034, 48 L.R.A.(N.S.) 1134, was held confiscatory for 1918 and 1919.

"The order, although retrospective, was passed some time after the latest statute, and long after the original act would have expired. In our opinion it is open to inquire whether the exigency still existed upon which the continued operation of the law depended. * * * Without going beyond the limits of judicial knowledge, we can say at least that the plaintiffs' allegations cannot be declared offhand to be unmaintainable, and that it is not impossible that a full development of the facts will show them to be true. In that case the operation of the statute would be at an end."

This authority but followed like reasoning found in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165. And the Iowa court followed in the wake of these decisions in Des Moines J. S. L. Bank v. Nordholm, 217 Iowa, 1319, 253 N.W. 701, 708, quoting from Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, the following: " 'The Court (in the rent cases) also decided that, while the declaration by the Legislature as to the existence of the emergency was entitled to great respect, it was not conclusive; and, further, that a law "depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or. the facts change even though valid when passed." ' 'It is always

open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends.' "

We think, therefore, it is clear enough that the mere fixation by the lawmakers of a limitation period for the operation of the act does not suffice to change the character and substance and original purpose of the law. The act is essentially emergency legislation and nothing more, and the continuance of the emergency is necessary for its operation. To hold the act operative without regard to the matter of emergency, as appears to be here urged, and as plea 7 so considers it, is in the very teeth of the legislative declaration and intent. The very interesting discussion, therefore, indulged by counsel for the respective parties as to the North Carolina statute, is beyond the scope of this case and the purview of this court as to our own statute, which is wholly dissimilar. It will be time enough to consider the North Carolina statute when our Legislature sees fit to pass one of similar import. Thus far no such statute has here been enacted.

We conclude that plea 7 does not properly invoke the provisions of our emergency act, and that the assignments of demurrer specifically pointed out the defects herein noted.

Let the judgment stand reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.